UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JILL BERGER,

                    Plaintiff,                          Case No. 20-10112

v.                                                      Paul D. Borman
                                                        United States District Judge
TARGET CORPORATION,
A Foreign Corporation,

                    Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TARGET CORPORATION'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 6)

On March 11, 2019, Plaintiff Jill Berger filed a Complaint in the Wayne County Circuit Court against Target Corporation, which was subsequently removed to this Court based on diversity jurisdiction. (ECF No. 1, Notice of Removal; ECF No. 1-2, Complaint.) Plaintiff alleges three claims: Count I – Negligence; Count II – Violation of the Shopkeeper's Duty; and Count III – Nuisance. In this premises liability action, Plaintiff claims that she sustained injuries when she slipped and fell in some argan oil (a hair product) on the floor of a Target store. Now before the Court is Defendant Target Corporation's Motion for Summary Judgment, seeking dismissal of all of Plaintiff's claims. (ECF No. 6.) The Court held a hearing using Zoom videoconference technology on April 30, 2021, at which counsel for Plaintiff

and Defendant appeared. For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff Jill Berger, a resident of Pompano Beach, Florida, was in Michigan in March 2016 for a get-together with friends. (ECF No. 9-2, Jill Berger Deposition ("Pl. Dep.") at pp. 5, 30-31, PgID 249, 255.) On March 19, 2016, Plaintiff went to the Target-Canton South store to buy some shampoo. (*Id.* at pp. 31, 35, PgID 255-56.) Her husband, Adam Berger, dropped her off at the door and he stayed in the vehicle. (*Id.* at p. 31, PgID 255.) Plaintiff had been in the store for less than five minutes and walked down a couple of aisles when she slipped and fell, injuring her left shoulder and left side. (*Id.* at pp. 32, 39, PgID 255, 257.) She explained the incident as follows:

> Q. [By Mr. Willmarth – Defense counsel] So what I'm hearing, you turned into an aisle and that's when the incident occurred?
>
> A. [By Plaintiff] I turned into an aisle. I was able to clear that aisle. And then I went to turn into another aisle and that's when I slipped and fell.
>
> ***
>
> Q. What happened then?

A.     I turned the corner and then I slipped, fell. I tried to get my bearings, I tried to get up, then I fell again. At that point I believe there was a customer I believe at my feet who was trying to come and help me, and I was screaming at them no. I was trying to figure out what exactly happened and why I was falling. The first time I could not remember, I could not tell why I fell, and then I saw the oil all over me.

\*\*\*

Q.     Were you looking where you were going?

A.     I looked down the aisle straight, yeah, I was looking for products.

Q.     Did you look at the floor at all?

A.     I think I looked down the aisle, looked at the floor, looked at everything, didn't see anything. Nothing was out of the ordinary.

Q.     Did you see any liquid or anything on the floor?

A.     No.

\*\*\*

Q.     Did you see anybody spill anything as you were returning to the aisle?

A.     No.

Q.     Did you see anybody break something or throw something on the floor or let something drop?

A.     No.

(Pl. Dep. at pp. 35-37, PgID 256-57.) Plaintiff testified that she did not see anything on the floor the first time she fell, but "[t]he second time when I fell I said I'm falling

3

on something. Then I saw the oil. I picked my hand up or I saw oil. I was covered in oil rather." (*Id.* at p. 39, PgID 257.) Plaintiff stated that she did not know how the oil got on the floor or how long it was there. (*Id.* at p. 50, PgID 260.)

While she was still on the floor, Plaintiff called her husband, Adam Berger, and told him that she had fallen and could not get up. (*Id.* at p. 49, PgID 260.) (ECF No. 9-4, Deposition of Adam Berger ("A. Berger Dep.") at pp. 6-7, PgID 264.) Mr. Berger testified that he went into the store and found Plaintiff still on the ground, and he eventually helped her into a wheelchair. (A. Berger Dep. at pp. 6-7, PgID 264.) The store video of the aisle does not show a wheelchair coming out of the aisle, but rather shows Plaintiff and her husband walking out of the aisle after the fall. Mr. Berger stated that he saw "skid marks on the floor," but could not see any substance on the floor "with the naked eye" and that "you have to look for it [the oil]." (*Id.* at p. 9, PgID 265.)

Steve Sarten was the first Target employee to respond after Plaintiff's fall. (ECF No. 9-5, Deposition of Steve Sarten ("Sarten Dep."), at p. 5, PgID 271.) Sarten was approached by a customer who told him about the incident. (*Id.*) He stated he saw Plaintiff sitting on the ground, and that he saw a "small spill of brown liquid" "[o]n the ground" which he determined was from a "vial of Haus Argan Oil." (*Id.* at pp. 6-7, PgID 272-73.) When asked whether he could see the oil on the ground, he

4

responded "It was not apparent unless you were looking for it" because "it was lighter in color. So if you weren't actively looking at the ground as you were walking, you would not have noticed it." (*Id.* at p. 8, PgID 274.) He stated that he did not know how long the spill had been there. (*Id.*) Sarten called a "code green," which is the code for a team member or a guest incident. (*Id.* at p. 9, PgID 275) (ECF No. 9-12, Deposition of Erin Decker ("Decker Dep.") at p. 18, PgID 319.)

Target's Leader on Duty ("LOD"), Erin Decker, responded to the "code green" and investigated the incident. (Decker Dep. at pp. 6, 18, PgID 316, 319.) (ECF No. 9-6, Guest Incident Report, PgID 278.) Decker stated that the spill on the floor "looked like, it wasn't a very big spot so initially but when [Plaintiff] had stepped in it she kind of spread it so it was about, it ended up being at about half the aisle." (ECF No. 6-6, 3/24/2016 Recorded Statement of Erin Decker ("Decker Statement"), PgID 194.) She stated in her Recorded Statement dated five days after the incident that the spill "was clear, it was shinny [sic] though" (*id.*), but subsequently testified in her June 17, 2019 deposition that "[i]t was shiny on the floor, had a brownish tint to it. It's an oil." (Decker Dep. at p. 15, PgID 318.) Decker stated that she discovered a tube or vial of argan oil laying on the floor near the spill, and that she took some photographs of the aisle and also of the argan oil vial as part of her investigation (but that she did not photograph the vial as it was allegedly found

5

on the floor). (*Id.* at pp. 8-10, PgID 316-17.) (ECF No. 6-4, Photographs, PgID 170-72.) Decker reported that no Target team members knew about the spill prior to Plaintiff's accident. (Decker Statement, PgID 194.)

Decker, along with Plaintiff and Plaintiff's husband, filled out a "Guest Incident Report." (Guest Incident Report, PgID 278.) (Decker Dep. at pp. 6-8, PgID 316.) The "cause of the incident" was listed as "Argon [sic] Oil Hair Mask Broken on the floor." (Guest Incident Report, PgID 278.) Plaintiff, however, denied ever seeing the argan oil container, or any other source of the spill, on the floor. (Pl. Dep. at p. 44, PgID 258 ("Q. Did you see anything that you felt might have been the source of the oil that was on the floor? A. No.").)

There is a 41 minute video (in two different views) of the Health and Beauty Aisles at the Target Store, from 3:05 p.m. to 3:46 p.m. on March 19, 2016. (ECF No. 6-7, 3/19/2016 Incident Video CD.) The Court has reviewed the videos and notes that they only show a partial view of Aisle 8 (the aisle where the incident occurred) and do not appear to show when the spill happened or provide a clear view of Plaintiff's fall. The videos show several shoppers walking through Aisle 8 at various times prior to Plaintiff's fall, without incident. A shopper with two children appear in the video at around the 3:20:30 mark, and around 3:21, the two children can be seen "twirling" and/or "sliding back and forth" on the floor of Aisle 8. After the

shopper leaves the aisle, she appears to wipe the bottom of her shoe on the floor. After that, four more shoppers are seen moving in and about the same part of Aisle 8, without incident and without looking down at or paying any special attention to the floor.

Plaintiff appears on the video at around 3:25:12, walks past Aisle 8, stops and turns to go back down the aisle. She bends over to pick up an item from the bottom shelf at 3:25:48, and at 3:25:59, her head can be seen going down on the bottom of the screen. Plaintiff's husband is seen at around 3:28:05, hurrying in the main aisle and entering the aisle where the incident occurred. A Target employee, possibly Sarten, is seen entering the aisle at round 3:29:39. At around 3:34:40, Plaintiff and her husband walk out of the aisle, stand by the end cap for a few moments, and then walk away, out of view of the camera, at around 3:36:19. Defendants contend that the videos show that there were no Target employees in the aisle where Plaintiff fell at any time prior to the incident. Plaintiff does not dispute this.

### B. Procedural History

Defendant filed a Motion for Summary Judgment, arguing that all of Plaintiff's claims should be dismissed. (ECF No. 6, Def.'s Mot. S.J.) Defendant contends that Counts I and II, in which Plaintiff claims that Defendant failed to timely clean the argan oil that was on the floor, essentially state a claim of premises

liability, which should be dismissed because there is no evidence that Defendant created, knew about, or had constructive notice of the alleged condition. Defendant further asserts that the condition was open and obvious. Finally, Defendant argues that Plaintiff's nuisance claim in Count III fails as a matter of law because it is clear there is neither a public nuisance nor a private nuisance alleged or supported by the evidence.

Plaintiff filed a response in opposition to Defendant's motion. (ECF No. 9, Pl.'s Resp.) Plaintiff agrees that Count III, Nuisance, should be dismissed, and that, "despite the headings of her complaint and various counts, her claim [against Defendant] does lie in premises liability[.]" (*Id*. at p. 12, PgID 232.) She argues that she has presented sufficient evidence that Defendant should have discovered the oil/slippery condition before she fell, and thus at least had constructive notice of the condition. She further contends that clear oil on a shiny floor is not readily observable by casual inspection and thus is not open and obvious.

Defendant filed a reply brief asserting that Plaintiff has failed to present sufficient summary judgment evidence supporting her claim of constructive notice in this case. (ECF No. 11, Def.'s Reply.) Defendant also reasserts that the oil was open and obvious to casual inspection.

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley*

9

*Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

### III.  ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

10

### A.    Premises Liability (Counts I and II)

In Michigan, premises liability flows from the ownership, possession, or control of the land at issue. *Laier v. Kitchen*, 266 Mich. App. 482, 493 (2005). To succeed in a premises liability action, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty; (2) that the defendant breached that duty; (3) that the defendant's breach caused the plaintiff's harm; and, (4) that the plaintiff suffered damages. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003).

For the purposes of premises liability, the landowner's duty depends on the status of the injured party. *Taylor v. Laban*, 241 Mich. App. 449, 425 (2000) (*citing Doran v. Combs*, 135 Mich. App. 492, 495 (1984)). Michigan utilizes three categories: invitees, licensees, and trespassers. *Kessler v. Visteon Corp.*, 448 F.3d 326, 336-37 (6th Cir. 2006). An invitee is an individual who enters the land of another for a commercial purpose. *Cote v. Lowe's Home Ctr., Inc.*, 896 F. Supp. 2d 637, 644 (E.D. Mich. 2012).

The parties agree that Plaintiff was an invitee on the Defendant's premises at the time of her fall. A "premises possessor owes [a] business invitee [a] duty to exercise reasonable care to protect her from [an] unreasonable risk of harm caused by [a] dangerous condition on the land." *Hollerbach v. Target Corp.*, 443 F. App'x 936, 938 (6th Cir. 2011) (citing *Banks v. Exxon Mobil Corp.*, 477 Mich. 983 (2007))

(alterations added). "A premises owner's duty to an invitee 'arises when the defendant has actual or constructive notice of the condition.'" *Hollerbach*, 443 F. App'x at 938 (quoting *Banks*, 477 Mich. at 983). There is no claim of actual notice here. Rather, Plaintiff contends that Defendant, "in the exercise of reasonable diligence, should have discovered the dangerous condition of slippery clear oil spilled in the aisle containing hundreds of bottles filled with liquid," and thus had constructive notice of the condition. (Pl.'s Resp. at p. 16, PgID 236.)

### 1. Whether Defendant Had Constructive Notice of the Dangerous Condition

Constructive notice will be found where the unsafe condition "is of such a character or *has existed a sufficient length of time that [the store owner] should have had knowledge of it.*" *Clark v. Kmart Corp.*, 465 Mich. 416, 419 (2001) (emphasis in original, alteration added) (internal quotation marks and citation omitted). Thus,

> constructive notice may arise not only from the passage of time itself, but also from the type of condition involved, or from a combination of the two elements. Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law.

*Banks*, 477 Mich. at 983-84. "'The mere existence of a defect or danger is not enough to establish liability, unless it is shown to be of such a character or of such duration that the jury may reasonably conclude that due care would have discovered it.'"

12

*Goldsmith v. Cody*, 351 Mich. 380, 388 (1958) (quoting Prosser on Torts (2d Ed.), 459). Moreover, the premises owner does not have to present evidence that it lacked notice of the alleged hazardous condition, but need only show that the invitee presented insufficient proof to establish the notice element of her claim. *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1, 3 (2016).

For a constructive notice claim to survive summary judgment, there must be sufficient "evidence [to] permit a jury to find that the dangerous condition was present long enough that the defendant should have known of it." *Clark*, 465 Mich. at 419. "Generally, the question of whether a defect has existed a sufficient length of time and under circumstances that the defendant is deemed to have notice is a question of fact, and not a question of law." *Banks*, 477 Mich. at 984; *Goldsmith*, 351 Mich. at 388 ("Where the defect was of such a nature as to warrant the conclusion that it had existed an appreciable time, we have held the question of constructive notice to be one for the jury.") On the issue of what constitutes "an appreciable amount of time," courts have concluded that varying amounts of time, depending on the circumstances, will serve as a basis to charge the premises owner with constructive notice. *See, e.g., Mousa v. Wal-Mart Stores E., L.P.*, No. 11-14522, 2013 WL 5352949, at *5 (E.D. Mich. Sept. 23, 2013) (concluding that defendant should have discovered the spill within 20 minutes, although it "is a close case");

*Jackson v. Target Corp.*, No. 12-12190, 2013 WL 3771354, at *5 (E.D. Mich. July 18, 2013) (finding a question of fact exists regarding constructive notice where the 17-minute long video does not show any cause for the water spill before the plaintiff's fall); *Knight v. Target Corp.*, No. 1:17-CV-782, 2018 WL 6529523, at *3 (W.D. Mich. Nov. 1, 2018) (plaintiff submitted no evidence that could lead a reasonable juror to conclude that a puddle that existed for at most 17 minutes before plaintiff's fall "existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discovery it."); *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 10 (1979) (absent evidence from which a reasonable inference, as opposed to mere conjecture, could be drawn that the substance had been on the parking lot ground for some time, such as testimony that several cars had driven through the spot, no reasonable inference could be drawn that Sears should have known of its presence); *Clark*, 465 Mich. at 419 (evidence that suggested that grapes had been on a grocery store floor for at least an hour was sufficient for the jury to find that the dangerous condition that led to the injury existed for a sufficient amount of time that defendant should have known of its existence); *Banks*, 477 Mich. at 983 (reasonable juror could conclude that defendant should have discovered the defect in gas pump, found lying on the ground, that was last used eight minutes prior).

The Sixth Circuit has summarized the parameters of this "constructive notice" theory as follows:

> Under Michigan law, shopkeepers have a duty to maintain reasonably safe premises. *Clark v. Kmart Corp.*, 465 Mich. 416, 634 N.W.2d 347, 348 (2001). A shopkeeper is negligent and thus liable for injury resulting from an unsafe condition if he: (1) actively caused the hazard, (2) knew about the hazard, or (3) should have known about the hazard. *Id.* at 348–49. Under this third theory of liability, a shopkeeper can be charged with constructive notice if the unsafe condition "is of such a character or has existed a sufficient length of time that he should have had knowledge of it." *Id.* at 349. A plaintiff can use circumstantial evidence to establish negligence, as long as the inferences drawn from the evidence are reasonable and constitute more than mere speculation or conjecture. *Whitmore v. Sears, Roebuck & Co.*, 89 Mich. App. 3, 279 N.W.2d 318, 321 (1979).

*Gonzales v. Target Corp.*, 622 F. App'x 517, 518 (6th Cir. 2015). "There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only." *Kaminski v. Grand Trunk Western R. Co.*, 347 Mich. 417, 422 (1956). Thus, while "'[n]otice may be inferred from evidence that the unsafe condition has existed for a length of time sufficient to have enabled a reasonably careful storekeeper to discover it[,] [w]here there is no evidence to show that the condition had existed for a considerable time, [ ] a directed verdict in favor of the [defendant] is proper." *Daniel v. Target Corp.*, No. 12-10170, 2013 WL 12123744, at *2 (E.D. Mich. Mar. 20, 2013) (quoting *Whitmore*, 279 N.W.2d at 321) (final

alteration in original). "'[A]lthough constructive notice of a hazardous condition can be supported by reasonable inferences drawn from the evidence, such inferences must amount to more than mere speculation or conjecture.' " *Id.* (quoting *Stephens v. Kroger Co.*, No. 232135, 2002 WL 1999761, at *1 (Mich. Ct. App. 2002)).

In this case, Defendant argues in its motion that there is no evidence that it created, had knowledge of, or had notice of, the presence of the argan oil on the floor prior to Plaintiff's fall. (Def.'s Mot. at pp. 12-13, PgID 154-55.) Defendant notes that Plaintiff admits that she did not see anyone spill anything on the floor, that she does not know how long the oil was on the floor, and that she does not know that any Target employee knew about the oil prior to her fall. (*Id.* at p. 13, PgID 155, citing Pl. Dep. at pp. 37, 50, PgID 257, 260.) Defendant further notes that the video shows several persons walking in the area of the fall without incident, and does not show any Target team members in the area. (*Id.*) Defendant explains that "[t]he mere happening of an accident is not, in and of itself, evidence of negligence." (*Id.* at p. 12, PgID 154, citing *Whitmore*, 89 Mich. App. at 9.)

Plaintiff responds that Defendant, as a shopkeeper, owed a legal duty to Plaintiff to "provide reasonably safe aisles for customers." (Pl.'s Resp. at p. 14, PgID 234 (collecting cases addressing the "shopkeeper's duty").) Plaintiff also asserts that a property owner owes a duty to inspect the premises for dangerous conditions and

16

to correct such conditions. (*Id*. at pp. 14-15, PgID 234-35.) Finally, Plaintiff contends that when the condition has "existed an appreciable time," the issue of constructive notice becomes a jury question. (*Id.* at pp. 15-16, PgID 235-36.) Plaintiff argues that although the 21 minute video evidence (prior to Plaintiff's fall) in this case "does not show when the bottle [of argan oil] fell," it "likely existed on the floor even longer!" (*Id*. at p. 17, PgID 237.) Plaintiff contends that the "no one clearly drops the oil in the 21-minute video, and certainly NO Target employees are inspecting the area[.]" (*Id.* at p. 18, PgID 238 (capitalization in original).) Plaintiff also notes that the Target employee on duty in the section where Plaintiff fell testified that she "had probably … been on [duty] for about an hour or so, an hour or two" before Plaintiff's fall, but that she had not walked that aisle during that time. (ECF No. 9-13, Deposition of Stephanie Swilley ("Swilley Dep.") at p. 8, PgID 327.) (See also ECF No. 11-1, Deposition of Cortland Mason ("Mason Dep.") at p. 13, PgID 346 (testifying that she had been on duty since "[a]round 9 [a.m.]" on the day of the incident and that she would walk through the hair products area "[p]robably 20 to 50 times" "[o]n a regular day.").) Plaintiff argues that "no tenable argument exists that Defendant was not on constructive notice of the dangerous condition[.]" (Pl.'s Resp. at p. 21, PgID 241.)

As the Michigan Supreme Court explained in *Lowrey v. LMPS & LMPJ, Inc.*, 500 Mich. 1 (2016), to be entitled to summary judgment on a premises liability claim, the defendant premises owner does not have to present evidence that it lacked notice of the dangerous condition that allegedly caused the invitee to fall, but only needs to show that the plaintiff/invitee has presented insufficient proof to establish the notice element of her claim. *Id.* at 3. That Court further explained that it "has never required a defendant to present evidence of a routine or reasonable inspection under the instant circumstances to prove a premises owner's lack of constructive notice of a dangerous condition on its property." *Id.* at 10; *see also id.* at n.1 ("To the extent that *Grandberry-Lovette v. Garascia*, 303 Mich. App. 566, 844 N.W.2d 178 (2014), supports the Court of Appeals' position regarding a defendant's burden of proof on a motion for summary disposition or the elements necessary to prove constructive notice, it was incorrect."). Rather, a plaintiff must show that the defendant knew about the dangerous condition or "should have known because of it because of its character or the duration of its presence." *Id.* at *11.

In this case, Plaintiff claims that Defendant had constructive notice of the condition in that it should have known of the oil because of its character and/or the duration of its presence. (See Pl.'s Resp. at pp. 16-21, PgID 236-41.) Plaintiff contends that the oil on the floor was clear liquid and difficult to see on the white

tile floor. (Pl.'s Resp. at p. 10, 21-22, PgID 230, 241-42.) Thus, she does not appear to claim that Defendant should have known about the oil because of its character or nature. *See Burke v. Dayton Hudson Co.*, 837 F. Supp. 228, 231 (E.D. Mich. 1993) ("[T]he undisputed testimony of the witnesses [that the salad dressing was difficult to discern because it was clear or translucent yellow] would not support a factual finding that the condition was of such a nature that defendant's employees should have noticed it."). While, under Michigan law, shopkeepers have a duty to maintain reasonably safe premises, *Clark*, *supra*, they "do not have a duty to inspect the store through binoculars or to scour the aisles from their hands and knees in hopes of finding a hidden danger." *Promo v. Dayton Hudson Corp.*, No. 95-2398, 1997 WL 234621, at *2 (6th Cir. May 6, 1997) (citing *Kroll v. Katz*, 374 Mich. 364, 373 (1965) ("The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection.")).

However, regarding the alleged duration of the hazardous condition, the Court finds, construing the evidence in the light most favorable to Plaintiff, that there is a genuine issue of material fact as to whether the oil spill existed for a sufficient period of time such that Defendant, if it was being reasonably careful, should have discovered it. The video evidence is inconclusive. It does not offer a full view of the aisle to show the spill or how long it was present. Plaintiff admits in her Response

that the video "does not show when the bottle fell," but a reasonable juror could find

from the video that the spill was present at least at the 3:21 mark based on the boys'

"twirling" and "sliding" on the floor, and their accompanying adult's subsequent

"wiping" of the bottom of her shoe. It is not clear from the video that the boys, or

anyone else prior, created the spill, and thus, as Plaintiff posits, the spill "likely

existed on the floor for even longer." (Pl.'s Resp. at p. 17, PgID 237.) Plaintiff fell

approximately five minutes later. (See Pl.'s Resp. at pp. 17-18, PgID 237-38.) In

addition, the evidence suggests that the oil spill could have existed for more time,

given the frequency with which the aisles had (or more aptly, had not) been inspected

that day. Defendant concedes that no Target employee is seen in the video on the

aisle at least 21 minutes prior to Plaintiff's fall. In addition, Swilley testified that

although she had been on duty for one or two hours before the incident, she had not

been down the aisle where the incident occurred. (Swilley Dep. at p. 8, PgID 327.)

This evidence would allow a reasonable juror to conclude that the oil spill could

have existed for a "considerable" period of time prior to Plaintiff's fall, which could

establish that Defendant should have had constructive notice of the defect. *See*

*Shiemke v. Target Corp.*, No. 13-14738, 2014 WL 7204971, at *6 (E.D. Mich. Dec.

17, 2014) (finding that "the evidence suggests that the water spill could have existed

for a considerable amount of time, given the frequency with which the aisles had been inspected on that day").

Accordingly, the Court finds that there is a genuine issue of material fact, based on the video footage and testimony in this case, as to whether the oil spill existed on the floor for a sufficient length of time such that a reasonable juror could find that Defendant, if it was being reasonably careful, should have discovered the oil spill prior to Plaintiff's fall.

### 2. Whether the Dangerous Condition was Open and Obvious

Defendant argues that the oil spill on the floor was open and obvious, and therefore Defendant did not owe Plaintiff a duty to protect her from, or warn her of, the spill.

The open and obvious doctrine is "an integral part of the definition of [the] duty that an invitor owes to its invitee." *Matteson v. Northwest Airlines, Inc.*, 495 F. App'x 689, 691 (6th Cir. 2012). The premises owner's duty to invitees does not include a duty to protect them from "open and obvious" dangers. *Id*. at 691(quoting *Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001)). "Put simply, [the open and obvious doctrine] means that an invitor has no duty to protect its invitee from an open and obvious danger, unless that danger has special aspects that make it particularly likely to cause harm." *Id.*

21

A hazard is open and obvious if "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon causal inspection." *Id.* The Court should consider whether "it is reasonable to expect that the invitee would discover the danger[.]" *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475 (1993). "If reasonable minds could differ on the question of whether a condition is open and obvious, the decision must be left to the jury." *Mousa*, 2013 WL 5352949, at *5 (*citing Vella v. Hyatt Corp.*, 166 F. Supp. 2d 1193, 1198 (E.D. Mich. 2001)).

Defendant argues that the presence of brown argan oil on the white tile floor, as it contends is shown in the photos taken on the day of the incident, was open and obvious to casual inspection, and that no special circumstances exist to remove the condition from the scope of the Open and Obvious Doctrine. (Def.'s Mot. at pp. 15-16, PgID 157-58.) Defendant continues, that because the standard is an objective one, it is irrelevant that Plaintiff states she did not see the oil before she fell. (*Id.* at p. 17, PgID 159.) And, Defendant continues, there are no "special aspects" here because the harm could have easily been avoided by simply not going down that aisle. (*Id.*)

Plaintiff responds that the clear oil on the shiny floor was not open and obvious. (Pl.'s Resp. at p. 21, PgID 241.) Plaintiff points out that Ms. Decker, the

Target Leader on Duty, filed a statement five days after the incident that the oil was clear and shiny, but did not report that it had a brown color:

> JN: And then in terms of the spill can you describe it in terms of the size?
>
> ED: Um, it was, it looked like, it wasn't a very big spot so initially but when she had stepped in it she kind of spread it so it was about, it ended up being at about half the aisle.
>
> JN: Then is it clear or any color to it?
>
> ED: Um, no, it was just, it was clear, it was like shinny [sic] though.

(ECF No. 6-6, PgID 194.) It was not until her subsequent deposition that Decker stated for the first time that the oil had a "brownish tint to it." (Decker Dep. at p. 15-17, PgID 318.) In addition, while Target employee Sarten testified that the oil was "a light brown-ish color," he stated that the oil could not be seen unless one was bent over looking for it. (Sarten Dep. at p. 8, PgID 274.)

Plaintiff argues that this inconsistent testimony creates a question of fact for the jury to decide. (Pl.'s Resp. at pp. 22-23, PgID 242-43.) The Court agrees. The open and obvious inquiry must "take into consideration the particular condition at issue and its unique qualities which may or may not make it observable or wholly revealed by casual observation before the slip and fall." *Pernell v. Suburban Motors Co., Inc.,* No. 308731, 2013 WL 1748573, at *3 (Mich. Ct. App. Apr. 23, 2013) (internal quotation marks and citation omitted). While Defendant relies in part on

the photos of the aisle taken on the day of the incident (Photographs, PgID 170-72), it is not plain from a review of those photographs that the spill would have been "readily observable by casual inspection." "At best, the evidence is inconsistent on the issue of the appearance of the color of the liquid spill at the time that Plaintiff slipped and fell. Viewing the evidence in the light most favorable to the Plaintiff, the Court must assume for purposes of summary judgment that the liquid spill was clear. A jury, of course, would be free to conclude otherwise." *See Mousa*, 2013 WL 5352949 at *7 (citation omitted). The Court therefore finds that whether the spilled argan oil was open and obvious to casual inspection is a fact question for the jury to decide.[1]

---

[1] Plaintiff further argues that, if the oil spill was deemed "open and obvious," there are "special aspects" that make the hair oil on the floor unreasonably dangerous simply because oil is "by nature slippery and designed to coat a surface" and thus "one who encounters a clear hair oil spill stands an extremely high chance of slipping in the spill" and thus a "uniquely high likelihood of harm." (Pl.'s Resp. at p. 24, PgID 244.) The Court need not reach this issue because it finds that a fact question exists as to whether the spill was open and obvious. In any event, as Defendant argues in its reply brief, the presence of a slippery condition is not a special aspect, as the plaintiff simply could have chosen not to go down the aisle, and many premises liability cases involve slips and falls under slippery conditions. (Def.'s Reply at p. 6, PgID 341.) Defendant plainly has the better argument, and Plaintiff has failed to substantiate a claim that the presence of oil alone renders this case as falling within the "special aspects" exception to the open and obvious doctrine. Rather, the "special aspects" exception has been interpreted to include two specific types of hazards that, though open and obvious, nonetheless require a heightened duty on the part of the premises owner: (1) those that are unavoidable (such as the only exit from the premises being covered with standing water); and (2) those that

Accordingly, Defendant's motion for summary judgment as to Plaintiff's premises liability claim is denied.

### B.     Nuisance Claim (Count III)

Plaintiff's Complaint included a claim of public or private nuisance. (Compl. Count III, PgID 14.) Defendant moved for summary judgment on this claim, asserting that Plaintiff fails to state a valid claim for relief for a public or private nuisance under Michigan law. (Def.'s Mot. at pp. 18-22, PgID 160-64.) Plaintiff concedes in her Response that the nuisance claim is "untenable after all the discovery has been completed," and that she "does not oppose the dismissal of this count by the Court." (Pl.'s Resp. at p. 25.)

The Court therefore grants Defendant's motion as to Plaintiff's nuisance claim (Count III), and dismisses that claim with prejudice.

## IV.     CONCLUSION

For the reasons set forth above, the Court finds that genuine issues of material fact exist on the issues of whether Defendant had constructive notice of the oil spill and whether the oil spill was open and obvious, and thus **DENIES** Defendant's

---

present a substantial risk of death or severe injury (such as a thirty foot deep pit in the middle of a parking lot). *Lugo*, 464 Mich. at 518. This case does not fall into either of those exceptions.

motion for summary judgment as to Plaintiff's premises liability claim (Counts I and II).

The Court **GRANTS** Defendant's motion for summary judgment as to Plaintiff's nuisance claim (Count III), which she agreed to dismiss in her Response, and **DISMISSES** that claim **WITH PREJUDICE**.

This Opinion and Order does not resolve all pending claims and does not close this case.

IT IS SO ORDERED.


Dated: May 11, 2021                          s/Paul D. Borman
                                             Paul D. Borman
                                             United States District Judge